**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **AMIN MOHAMED ABDALLAH** | **CIVIL ACTION NO. 3:26-1450** |
| | **SECTION P** |
| **VS.** | **JUDGE JERRY EDWARDS, JR.** |
| **U.S. IMMIGRATION & CUSTOMS ENFORCEMENT** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**<u>REPORT AND RECOMMENDATION</u>**

Petitioner Amin Mohamed Abdallah,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 20]. For reasons below, the Court should grant the petition.

**<u>Background</u>**

Petitioner is a citizen of Sudan. He entered the United States of America on January 16, 2025. [doc. # 1-2, p. 2]. ICE detained Petitioner the same day. [doc. # 1, p. 5].

On February 12, 2025, an immigration judge ordered Petitioner removed. Petitioner did not appeal the removal order. [doc. #s 1, p. 5; 20-3].

Petitioner filed this proceeding on approximately May 5, 2026. He claims that ICE has detained him for a prolonged period and is not likely to remove him in the reasonably

---

1 Petitioner's "A Number" is 221-312-730.

2 This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

foreseeable future. [doc. # 1, pp. 6-7]. He has fully cooperated with "all ICE's efforts to remove" him, including providing information, applying for a travel document, providing a photograph and other identification documents, and signing deportation papers. [doc. # 1-2, p. 2]. He states that Sudan does not have a repatriation agreement with the United States. *Id.* Petitioner also recounts that on April 5 and 6, 2026, he asked ICE to release him on supervision, noting to ICE that it was unlikely that he would be removed in the reasonably foreseeable future. [doc. # 1-3, pp. 2-3].

Respondents opposed the petition on September 25, 2026. [doc. # 20]. Petitioner filed a reply on October 15, 2026. [doc. # 26].

**Law and Analysis**

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to

believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3] "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701. If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period.

Next, Petitioner meets his initial burden of providing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. For at least 583 days (or 1 year, 7 months, and 4 days) following his final order of removal, the Government has been unable to remove him. In addition, Petitioner has fully cooperated with "all ICE's efforts to remove" him, including providing information, applying for a travel document, providing a photograph and other identification documents, and signing deportation papers. He states that Sudan does not have a repatriation agreement with the United States.

---

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

Petitioner adds:

> First, all documentary evidence required for a showing of immediate removal lies in the sole possession of Respondents. . . . . Further, there is no indication they provided Abdallah with any documents stating that he will be deported any time soon. They simply assert it is so. To force Abdallah to present evidence of something that does not exist is an impossible negative proof problem that no one can overcome. Like most Habeas Petitions, the evidence lies in both the length of detention and in the lack of removal evidence. It is undisputed Abdallah's order of removal was issued more than six (6) months ago. Since that time, Abdallah has received no indication his removal is reasonably foreseeable.

[doc. # 26, p. 4]. The undersigned recognizes, as Petitioner points out, that Respondents possess most if not all of the evidence regarding any efforts to remove him. Petitioner need not prove a negative to meet his initial burden. It suffices from his length of detention and showing/argument that from his perspective—without the benefit of information he might not possess before receiving the Government's response to his petition (such as communications within the agency or between the agency and another country)—he has good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.[4]

Respondents in turn present the declaration of Assistant Field Office Director Justin Williams, who declares in part:

> 8) On February 12, 2025, an Immigration Judge conducted a review of the negative credible fear determination and affirmed the finding, rendering the petitioner's order of removal administratively final.

---

[4] *See generally Suarez-Rosabal v. Warden, Fla. Soft Side S. Det. Ctr*., No. 2:26-CV-1376-KCD-DNF, 2026 WL 1413161, at *2 (M.D. Fla. May 20, 2026) ("To shift the statutory burden, he need not prove a negative with absolute certainty. He just needs to provide a 'good reason to believe' that his removal is nowhere on the horizon. . . . He does just that by highlighting a telling silence in the record: the total absence of any travel documents for his removal."); *Egharevba v. Benzel, et al., Respondents.*, No. 26-CV-10628, 2026 WL 2655018, at *5 (D.N.J. Sept. 9, 2026) ("*Zadvydas* does not require a noncitizen to prove a negative, i.e., that no conceivable avenue to removal exists. Furthermore, only the Government possesses the information most relevant to the foreseeability of removal, such as its communications with potential receiving countries and ability to arrange transportation.").

9) Because the petitioner had a final order of removal, ERO immediately began efforts to secure travel documents. On March 5, 2025, a property search was conducted for any original/copies of identity documents. On March 17, 2025, ERO noted that nothing was found in property.

10) On March 19, 2025, a Travel Document Request was emailed to ERO Headquarters for review and guidance. The travel documents request was returned to the docket officer for further editing. On March 21, 2025, the edits were made and the travel documents request was uploaded into the electronic travel documents database, and the travel document request packet was mailed to the headquarters Detention and Deportation Officer.

11) On April 8, 2025, a travel document was issued for the petitioner.

12) On April 11, 2025, the physical travel documents arrived at the field office and were placed in the A-file. The file was then forwarded to the deportation officers for commercial removal preparation. The file was prepared for commercial removal and forwarded to the Supervisory Detention and Deportation Officer for review on April 14, 2025.

13) On June 11, 2025, a commercial flight ticket was received, and the petitioner's removal to Sudan was scheduled for July 1, 2025. However, the removal was subsequently placed on standby as ERO management worked with other federal agencies regarding the removal logistics.

14) On October 10, 2025, the petitioner was returned to the Jackson Parish Correctional Center, as his travel document had expired, and the process for a new one must be reinitiated.

15) December 18, 2025, ERO initiated a request for a reissued travel document. On this date the petitioner was interviewed to take a passport picture. Additionally, a cover letter and expired travel document was forwarded to ERO headquarters Detention and Deportation officer for approval.

16) On February 12, 2026, Headquarters ERO presented the travel document request package during a meeting at the Sudanese Embassy. On February 18, 2026, the Embassy indicated they were prepared to issue the document upon receipt of passport-styled photos.

17) Since that time, ERO has maintained regular contact with ERO Headquarters to track the status of the travel document reissuance. ERO contacted Headquarters for updates on March 5, March 23, April 6, April 20, May 4, May 28, June 11, June 25, July 9, August 6, and August 20, 2026.

> 18) On August 27, 2026, ERO Headquarters noted they are "pressing" the Sudanese Embassy for the travel document, and were advised the travel document is forthcoming, and expected within the upcoming weeks.
>
> 19) On September 25, 2026, ERO contacted Headquarters for an update on any correspondence with the Sudanese consulate regarding issuance of the travel document, and a response is pending.
>
> 20) Petitioner has not been removed as of the time of this declaration, September 25, 2026; however, ERO is, and has been actively engaging with the Sudanese Embassy through ongoing diplomatic and operational efforts in an attempt to secure a reissued travel document. Petitioner will be scheduled for removal once the travel documents are received.

[doc. # 20-4, pp. 2-3].

Distilled, the facts are as follows: (1) Petitioner was ordered removed in February 2025; (2) the Government obtained a travel document for him on April 8, 2025; (3) the Government obtained a flight ticket for him on June 11, 2025; (4) on an unknown date prior to July 1, 2025, the Government was unable to remove Petitioner on the flight due to unstated "removal logistics"; (5) four months passed with no indication of progress or attempts at progress; (6) Petitioner's travel document expired in approximately October 2025; (7) while continuing to detain Petitioner, the Government waited two months before initiating a request for another travel document on December 18, 2025; (6) on February 12, 2026, the Government presented a travel document request package to the Sudanese Embassy; (7) to date, over 8 months after requesting a travel document from Sudan, the Government has not obtained a travel document.

Respondents do not establish that removal is significantly likely to occur in the reasonably foreseeable future.[5] The Sudanese embassy did allegedly state on August 27, 2026, that a travel document is forthcoming in the upcoming weeks. However, that was almost two

---

[5] The longer a request remains pending without any action, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *See Zadvydas*, 533 U.S. at 701.

months ago, and the Government has not obtained a travel document. In addition, while the Government obtained a travel document before—which suggests that it could do so again—it was ultimately unable to remove Petitioner due to unstated logistical problems. The Government's inability to remove Petitioner even after obtaining a travel document before suggests that even if the Government obtains a travel a document for Petitioner soon, it is not significantly likely that the Government will *remove* Petitioner in the reasonably foreseeable future.[6]

Respondents cannot rest on bald assertions that removal is foreseeable without providing sufficient supporting evidence. "A theoretical possibility of eventually being removed does not satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008).

Petitioner need not show that removal is impossible. *Zadvydas,* 533 U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.[7]

---

[6] "ERO contacted Headquarters for updates on March 5, March 23, April 6, April 20, May 4, May 28, June 11, June 25, July 9, August 6, and August 20, 2026." [doc. # 20-4]. While this demonstrates that the Government has not remained idle, it also indicates that the Government has no idea of when Sudan might issue a travel document. The Government even states that the "processes for obtaining a temporary travel document from another country are . . . beyond the control of ICE." [doc. # 20, p. 4]. As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

[7] While not dispositive, the undersigned also finds it persuasive that to date, Petitioner has remained in detention for a total of one year and nine months.

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[8]

**Conclusion**

For the reasons above, **IT IS RECOMMENDED** that Petitioner Amin Mohamed Abdallah's petition for habeas corpus be **GRANTED**: Respondents, and the warden of Jackson Parish Correctional Center, shall (A) immediately release Petitioner from custody without bond, under reasonable conditions of supervision if necessary and (B) notify Petitioner's counsel of the exact location and time of his release no less than two hours before his release.

**IT IS FURTHER RECOMMENDED** that Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming his release.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** ***See Douglass v. United Services Automobile Association*****, 79 F.3d 1415 (5th Cir. 1996).**

[8] The undersigned finds no need to address any claim or request for relief not addressed herein.

In Chambers, Monroe, Louisiana, this 15th day of October, 2026.

Kayla D. McClusky
United States Magistrate Judge